UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CONTAINMENT TECHNOLOGIES GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:07-cv-0997-DFH-TAB |
| AMERICAN SOCIETY OF HEALTH SYSTEM PHARMACISTS; GREGORY F. PETERS; MARGHI R. McKEON; and, WILLIAM T. WEISS, | ) ) ) ) ) | |
| Defendants. | ) | |

ENTRY ON DEFENDANTS' FEE PETITIONS

The March 15, 2007 issue of the American Journal of Health-System
Pharmacy included an article entitled "Potential for Airborne Contamination in
Turbulent and Unidirectional Air Flow Compounding Aseptic Isolators."  The
article reported on comparative tests of several specialized products called
compounding aseptic isolators.  These important devices are used where
medications that will be injected directly into a patient's bloodstream are
prepared.  The devices keep the medications sterile and safe for injection.  The
article reported results that were critical of a product made by plaintiff
Containment Technologies Group, Inc. ("Containment Tech").  Plaintiff filed this
defamation action against the publisher of the magazine, the American Society of
Health System Pharmacists (ASHP), and the article's three authors.

After a reasonable time for discovery pursuant to the agreed case management plan, all defendants filed motions to dismiss pursuant to Indiana's anti-SLAPP law ("SLAPP" stands for "strategic lawsuits against public participation").  See Indiana Code § 34-7-7-1 *et seq.*  Treating the motions to dismiss as motions for summary judgment, this court granted the motions.  2009 WL 838549 (S.D. Ind. March 26, 2009).  Indiana Code § 34-7-7-7 provides that a prevailing defendant under the anti-SLAPP law "is entitled to recover reasonable attorney's fees and costs."  All defendants have now filed petitions for their attorney fees and costs.  For the following reasons, those petitions are granted in full.

## Discussion

Containment Tech sued four defendants.  The claim against publisher ASHP was distinct from the claims against the individual authors.  ASHP had its own counsel.  Author Peters owns his own business (Lab Safety Corp.) and employs author McKeon.  They shared the same counsel.  Author Weiss had his own counsel hired through his employer, the Mayo Clinic in Rochester, Minnesota.  The three authors raised very similar defenses.  For the most part, Weiss' counsel took the lead on a number of joint efforts, including discovery motions and the more substantive summary judgment briefing.  Dkt. No. 176 at 6.

The total request for ASHP is $220,591.21, including attorney fees, costs, and prejudgment interest.  The total request for Peters' and McKeon's counsel is $69,006.07.  The total request for Weiss' counsel is $220,757.07, but without prejudgment interest included.  Those figures are appropriate "lodestar" amounts – calculated by applying the attorneys' actual hourly rates to the hours spent on the litigation.  See generally *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).  The fee petitions show that the amounts sought were market rates actually billed to and paid by the clients, and the defense attorneys used "billing judgment" by choosing not to charge for some of their time and efforts.  See *id.* at 434.

The fee requests are substantial but reasonable.  All counsel on both sides of this case are highly competent, and the case was litigated vigorously on both sides.  (An appeal still proceeds on the merits.)  Containment Tech has raised no issue as to the reasonableness of the hourly rates sought.  The fact that they were market rates actually billed and paid is strong evidence that they were reasonable.  See *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) ("The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate."); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) ("the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"); *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992) (court's role is to determine market value of attorney's services, not to determine "the equivalent of the medieval just price").

The case presented a number of issues that raised the legal costs for the defense. There is a key choice of law issue. The relationship among the state anti-SLAPP statute, state procedural rules, and federal procedural rules presented several substance/procedure problems governed by the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). The substance of the scientific debate required all defense counsel to dig into the science and engineering involved in compounding aseptic isolators. The parties conducted substantial discovery, including numerous depositions taken by plaintiff Containment Tech, along with the usual disputes over the confidentiality of sensitive but unprivileged information during discovery.

The stakes were high. Containment Tech said in its interrogatory answers that it sought damages of $5.8 million. (It is unclear whether that number included any of the punitive damages being sought.) Beyond money, the professional reputations of the defendants and the availability of accurate information about the safety of important medical devices were at stake. And beyond the individual parties, larger principles of free scientific debate were at risk in this lawsuit. See *Underwager v. Salter*, 22 F.3d 730, 735 (7th Cir. 1994) (recognizing public interest in protecting vigor of scholarly research and publication). Those are the stakes that provide the foundation for the Indiana anti-SLAPP statute.

The attorney fee-shifting provision of the anti-SLAPP statute is a key part of the law's substantive policy.  It is designed "to place the financial burden of defending against so-called SLAPP actions on the party abusing the judicial system by bringing a SLAPP lawsuit." *Poulard v. Lauth*, 793 N.E.2d 1120, 1124 (Ind. App. 2003) (reversing denial of attorney fees where prevailing party's fees had been paid by a third party).  In applying the statute, the Indiana courts have explained:  "In general, the purpose of allowing an award of attorney's fees in a civil action is to 'make whole' and fully compensate a party who has successfully enforced his legal rights in court." *Shepard v. Schurz Communications, Inc.*, 847 N.E.2d 219, 227 (Ind. App. 2006) (affirming fee award and allowing appellate attorney fees under anti-SLAPP statute).

Containment Tech does not challenge the accuracy of the defendants' time records or the reasonableness of the hourly fees that support the requested lodestar amounts.  In an effort to reduce the fee award, Containment Tech argues: (1) that the defendants waited too long to file their motions to dismiss and that a fee award should include only time directly attributable to the motions rather than all reasonable efforts in the litigation; (2) that fees should not be awarded for some specific discovery activities; (3) that defendants are not entitled to fees incurred in seeking fee awards under the statute; and (4) that Weiss' attorney spent too much time on the case, especially when compared to the efforts of ASHP's attorneys.  None of these arguments are persuasive.

I.     *Timing of the Defense Motions*

Containment Tech's principal argument is that the defendants waited too long to file their motion under the anti-SLAPP statute.  The Indiana anti-SLAPP statute provides for a defense motion to dismiss that must be treated like a motion for summary judgment.  Ind. Code § 34-7-7-9(a).  The law also provides an expedited procedure for ruling on motions invoking the statute:  "All discovery proceedings in the action are stayed upon the filing of a motion to dismiss made under this chapter, except for discovery relevant to the motion."  Ind. Code § 34-7-7-6.  The statute instructs the court that once a defendant "files a motion to dismiss under this chapter," the court should specify time limits for discovery relevant to the motion and establish "a reasonable time period, not to exceed one hundred eighty (180) days, to expedite and rule on the motion."  Ind. Code § 34-7-7-9(a).

The case was removed to federal court on August 1, 2007.  All defendants raised the anti-SLAPP statute in their answers.  ASHP filed its summary judgment motion on August 21, 2008.  The authors filed their motion on October 1, 2008.  Containment Tech argues:  "Despite having raised the Anti-SLAPP statute early in litigation, Defendants chose to engage in and proceed with litigation, including initial disclosures, case management negotiations, extensive discovery, discovery disputes, and several depositions.  [Containment Tech] must not be penalized for

the strategic decision of Defendants that lead [sic] to a delayed filing of their respective Anti-SLAPP motions." Dkt. No. 190 at 4.

Containment Tech's argument fails at several levels.  First, even if the procedures of the Indiana anti-SLAPP statute were controlling here, the statute does not set a schedule for filing the motion to dismiss or otherwise require any expedited behavior by the defendant.  The expedited process and 180-day period in the statute are triggered by filing the motion to dismiss. Indiana Code § 34-7-7-9 states, with emphasis added:

> (a) If a person *files* a motion to dismiss under this chapter, the court in which the motion is filed shall do the following:
>
> \*   \*   \*
>
> (2) Establish a reasonable time period, not to exceed one hundred eighty (180) days, to expedite and rule on the motion.

The statute imposes no deadline for filing the motion.  Nor does the statute attempt to deny the plaintiff a fair opportunity to conduct discovery or to litigate its claim.

Second, even in state courts, the status of the statute's deadlines and specific procedures is doubtful.  As a matter of separation of powers under the Indiana Constitution, Indiana courts have repeatedly held that the procedural rules adopted by the Indiana Supreme Court take precedence in the case of a conflict with a legislative effort to dictate court procedure.  See *Shepard v. Schurz*

*Communications*, 847 N.E.2d at 224; accord, *State v. Bridenhager*, 279 N.E.2d 794, 796 (Ind. 1972); *Jackson v. City of Jeffersonville*, 771 N.E.2d 703, 705-06 (Ind. App. 2002); *Humbert v. Smith*, 655 N.E.2d 602, 604 (Ind. App. 1995), adopted on transfer, 664 N.E.2d 356 (Ind. 1996).

Third, after this case was removed to federal court, federal law and rules governed procedural aspects of the case. See generally *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v. Plumer*, 380 U.S. 460, 471 (1965) (holding that Federal Rule of Civil Procedure 4 for personal service of summons controlled diversity action in federal court).[1] Pursuant to standard procedures in this court, the parties conferred and agreed upon a case management plan. That plan did not provide for expedited motions practice or for limited or bifurcated discovery. See Dkt. Nos. 37 & 40. Some of the deadlines were adjusted from time to time, sometimes by agreement and sometimes over one side's opposition, but the lawsuit essentially followed the course charted in the agreed case management plan. Containment Tech now describes the steps along this path as delaying tactics intended to raise defendants' fee petitions. The court views these instead as necessary steps to prepare the case for orderly disposition after Containment Tech had a fair opportunity to develop its case. The court has found no indications in the record that Containment Tech tried to expedite the case or to

---

[1]In this case, the court held that the anti-SLAPP statute's complete defense to defamation claims and attorney fee provisions were substantive. The timing requirements in Ind. Code § 34-7-7-9, however, are decidedly procedural.

require compliance with the view of the state statute's procedures that it now advocates.

Fourth, to the extent that Containment Tech is arguing that a fee award should be limited to time spent actually preparing a motion to dismiss, the court views that limit as inconsistent with the anti-SLAPP statute and its purpose. Nothing in the statutory language imposes that limit. Indiana courts have interpreted the anti-SLAPP statute as intended to put the financial burden of the litigation defense on the plaintiff, *Poulard v. Lauth*, 793 N.E.2d at 1124, and to "make whole" and fully compensate a defendant who has successfully protected his rights. *Shepard v. Schurz Communications*, 847 N.E.2d at 227. As a matter of Indiana law, fee awards to prevailing defendants under the anti-SLAPP statute should reimburse them for all time reasonably spent on the litigation to achieve the successful result. That time will often include, as it does here, taking, responding to, and defending necessary discovery. Those activities will be necessary preludes to a successful motion. They should be reimbursed to make the defendant whole and to make the plaintiff bear the financial burden of the defense.

Under the federal rules, the parties were required to make initial disclosures, develop a case management plan, and start discovery. Given the complexity of this case and the high stakes, the filing of summary judgment motions twelve to fourteen months after the commencement of the case did not

reflect unreasonable delay by any party.  This conclusion is bolstered by the way that discovery took place.  While the defendants served some interrogatories and document requests, plaintiff was the prime mover for most discovery expenses. Defendants did not notice a single deposition.  All of their discovery was written discovery.  Depositions taken by plaintiff's counsel required all counsel to travel throughout the eastern part of the United States.

The court is not suggesting that Containment Tech conducted too much discovery.  It chose its course, and the court sees nothing unreasonable about it. But the defendants were certainly entitled to participate in that discovery.  It is unclear what Containment Tech would have had defendants do.  Containment Tech was entitled to take discovery to prepare its case, to respond to the defense motions, and to develop its theory of the case.  To reply to the defendants' motion for summary judgment, Containment Tech needed to come forward with evidence that would allow a reasonable jury to find, by clear and convincing evidence, that the defendants had published false defamatory content without a reasonable basis in law and fact for doing so.  See Ind. Code § 34-7-7-5.  To prepare its response, Containment Tech was entitled to conduct discovery, including depositions.  If ASHP and the authors had filed their summary judgment motions at the very outset, the court would have been required to grant Containment Tech a fair opportunity to conduct discovery to respond to the motions.  There would have been no point in filing a motion for summary judgment until Containment Tech had had a reasonable opportunity to conduct discovery.  Containment Tech's

arguments in opposition to the fee petitions seem to imply that the court should have prevented Containment Tech itself from taking discovery so as to reduce the defense costs.  But the parties proceeded at a reasonable pace, and the timing of the motions for summary judgment offers no basis for reducing the requested fees.

II.    *Challenges to Specific Actions During Discovery*

Containment Tech also argues that certain specific activities should not be compensated as part of an award of attorney fees.  First, it challenges the authors' discovery requests, which it says "far exceeded any information needed to support their Anti-SLAPP defense."  Dkt. No. 190 at 5.  Containment Tech refers to some of the information sought and then notes that it was not used in the authors' actual motion for summary judgment.  This is not the correct standard.  "Blind alleys are an ordinary part of litigation," and if the effort was reasonable at the time it was made, a reasonable fee award should cover it.  *Bohen v. City of East Chicago*, 666 F. Supp. 154, 158 (N.D. Ind. 1987) (Easterbrook, J., by designation).  The parties agreed on a fairly compressed schedule of about four months to conduct discovery.  The authors served a comprehensive document request at the outset.   The parties had not provided for staged discovery in their case management plan, so it was reasonable to take that approach.   It was not apparent at the time of the document request what the eventual strategy for summary judgment would be.  In fact, it took a considerable amount of time to

obtain from Containment Tech even something as basic as a definitive statement of the allegedly defamatory statements.

The most specific complaint by Containment Tech was about the authors' request for information on a different isolator from the one tested in the article at issue. The product is apparently similar to the device tested for the article, so it might have proved relevant at later stages in the case. The authors had no obligation to limit their discovery to the actual motion for summary judgment. Again, the procedural requirements of the Indiana anti-SLAPP rule could not possibly have been triggered until the defendants filed their motions, and they do not apply in federal court in any event. The parties did not seek limited or bifurcated discovery in this case. The Indiana statute provides for limited discovery, but even if that requirement applied, the limit kicks in only "upon the filing of a motion to dismiss made under this chapter." See Ind. Code § 34-7-7-6. The record does not indicate here that Containment Tech sought to limit its own discovery to matters relevant to the defense motions. All discovery for this case was scheduled to close on July 1, 2008 regardless of the disposition of the motions for summary judgment.[2]

---

[2]Containment Tech also challenges fees for discovery disputes, specifically defendant Weiss' litigation over a protective order. This dispute was part of the litigation, and Weiss had to deal with plaintiff's insistence on a protective order. The parties worked out a partial agreement, and Magistrate Judge Baker resolved the remaining disputes, with mixed results. Dkt. No. 118. The court probably would not allow fees for time devoted to a prevailing party's losing discovery motion, but this dispute was an integral and unavoidable part of the lawsuit. Since the attorney fees provision is intended to "place the financial burden of
(continued...)

Containment Tech also challenges the fees and costs devoted to the issue of the confidentiality of the article's peer reviewers. Containment Tech argues that this dispute was not relevant to the anti-SLAPP motion itself, so that the fees should not be recoverable. This argument has no more force here. ASHP seeks fees for roughly fourteen hours of time on the issue, which seems reasonable. Containment Tech was going to go after the peer reviewers in any event to show alleged bias – that was a key part of its litigation strategy.[3]

---

[2](...continued)
defending against so-called SLAPP actions" on the plaintiff, it must bear the cost of this expense as well. *Poulard v. Lauth*, 793 N.E.2d at 1124.

[3]Since Containment Tech wanted to depose the peer reviewers, this attempt to shield their identities could arguably have been a valid strategy for preparing the future motion for summary judgment and not simply an attempt to protect ASHP's confidentiality for the sake of the organization, as Containment Tech argues.

III.     *Fees on Fee Petition*

Containment Tech argues that the court should not include in a fee award any attorney time spent on litigating these fee award issues, relying on *In re Estate of Inlow*, 735 N.E.2d 240 (Ind. App. 2000).  The court held in *Inlow* that a probate attorney seeking to bill the estate is not entitled to collect a fee for time spent preparing the bill or litigating a fee petition under Indiana Code § 29-1-10-13.  *Id.* at 253-54.  *Inlow* applied the standard that governs when an attorney bills her own clients:  preparing a bill is a cost of doing business and the attorney does that work on her own clock.  As the *Inlow* court wrote:  "Requiring a client to pay an additional amount for being told what he owes in the first instance is neither good business nor good law."  *Id.* at 253.

The defendants and defense attorneys in this case are not trying to bill plaintiff for the attorneys' time spent preparing bills for their own clients (including the significant effort that goes into recording time for billing purposes). The defendants seek their attorneys' time devoted to litigating the contested fee issue.  Preparing a fee petition to require the opposing party to pay an attorney fee benefits the attorney's client directly.  Such time is routinely allowed under fee-shifting statutes, as the Indiana courts have made clear in distinguishing *Inlow* on this issue on precisely this basis.  See *Bigley v. Metropolitan School Dist. of Wayne Township*, 881 N.E.2d 77, 85-86 & n.9 (Ind. App. 2008) (ordering that prevailing party was entitled to attorney fees for time spent defending fee award

on appeal); *Walton v. Claybridge Homeowners Ass'n*, 825 N.E.2d 818, 824-25 (Ind. App. 2005) (affirming attorney fee award under fee-shifting contract, including time spent preparing and litigating fee petition). *Bigley* and *Walton* both noted that such fees for successful fee petitions are routinely allowed under federal fee-shifting statutes. *Bigley*, 881 N.E.2d at 85 n.8; *Walton*, 825 N.E.2d at 825 n.2. Such fees are necessary to make whole the party who incurred and paid those fees in the first place. *Bigley*, 881 N.E.2d at 85. As explained above, the purpose of the fee-shifting provision in the Indiana anti-SLAPP statute is to make the defense whole. *Shepard*, 847 N.E.2d at 227. Defendants are entitled to attorney fees incurred in obtaining this fee award.

IV.   *Imbalance in Time between ASHP's and Weiss' Attorneys*

Containment Tech points out that Weiss' counsel billed nearly twice as much for the successful motion for summary judgment as ASHP's equally successful counsel. This argument also must be rejected. While many of the alleged defamatory statements were brought against all defendants, the authors faced different issues. As the publisher, ASHP was able to defend itself by relying on the peer review process it established for the article. ASHP did not need to defend the ultimate accuracy of the article or the soundness of the authors' test methodology. It could rely on its efforts to ensure thorough review by others.

-15-

The authors, on the other hand, were required to defend the substance of their test methodology and the test results.  The authors were alleged to have developed the entire study to sully the name of Containment Tech.  The authors' only defense was the quality of their work.  Presumably Weiss' counsel is not an expert in compounding aseptic isolators.  The authors also had to deal with the complication that some of their data files from the test had been lost.  The fact that Weiss's counsel spent more time than ASHP's counsel does not mean that his time was unreasonable.  Not all attorneys are able to work at the same rate of efficiency.  Fee petitions are not decided based on what the most highly skilled and efficient attorney in the country could do but are decided based on what is reasonable.  The time spent by Weiss' counsel preparing the motion for summary judgment was reasonable.

*Conclusion*

The court grants the defendants' fee and cost petitions in the following amounts.  ASHP is entitled to $220,591.21.  Weiss is entitled to $220,757.07.  Peters and McKeon are entitled to $69,006.07.  The court is issuing a supplemental judgment to that effect.

So ordered.

Date: August 26, 2009

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Steven M. Badger
BOSE MCKINNEY & EVANS, LLP
sbadger@boselaw.com

Kellie M. Barr
BOSE MCKINNEY & EVANS, LLP
kbarr@boselaw.com

Jan M. Carroll
BARNES & THORNBURG LLP
jan.carroll@btlaw.com

Geoffrey B. Davis
DUE DOYLE FANNING  & METZGER
gdavis@duedoyle.com

Danford Royce Due
DUE DOYLE FANNING  & METZGER
ddue@duedoyle.com

Daniel P. King
FROST BROWN TODD LLC
dking@fbtlaw.com

Kara M. Moorcroft
BARNES & THORNBURG LLP
kara.moorcroft@btlaw.com

Kelly Michelle Scanlan
BOSE MCKINNEY & EVANS, LLP
kscanlan@boselaw.com

Joel E. Tragesser
FROST BROWN TODD LLC
jtragesser@fbtlaw.com

T. Joseph Wendt
BARNES & THORNBURG LLP
jwendt@btlaw.com